Good morning, and may it please the court. My name is Tracy Staub. I'm here on behalf of my client, Philip Rodriguez, Jr. I realize I have the unenviable position of being the last case on a hearing after a long week of arguments, so I appreciate it. No, but you know what? Two have fallen off, so it's a very short day. You have all the time you need. Well, don't tell me that. I've been sleeping all morning, but I finally waked up. I'm ready. Okay, good. There's two issues presented in this case. Both of them are sentencing issues, and both of them relate to Mr. Rodriguez's possession of guns. There's no question that he dealt drugs on three occasions, selling small quantities of cocaine, 60s, I think is what they call them, to a confidential informant and a DEA agent, that these sales occurred at his home, that he was observed, I believe, in his bedroom during part of these sales, and that neither the confidential informant or the DEA ever observed any guns, weapons, cases, ammunition, or were told that there were any in the house. If we were to agree with you on both points, that is to say that it was incorrectly increased because of the presence of guns in furtherance of or in connection with, and further, he was denied a reduction because he had a proper claim that these were used for hunting and collection. What's the maximum? What's the difference in the sentence that this would make? It would be huge, Your Honor. He's been in custody, I believe, since April of 2005. He got a 27-month sentence. He's currently scheduled to be released on his 27-month sentence in April of 2008, so that's next year. It's my understanding that if we were to grant relief on both of them. Oh, that's got to be he must have been in custody since 2006, that is to say. Well, yes, 2006, because he's been in custody since the day he was arrested. So he gets credit from the day he was arrested. That means he's got just over a year left. Right. Right. And it's my understanding that if the Court were to grant everything, it would be a zero to six range. So it's a very significant. So he gets out now. Yes. What's happened? At the time of sentencing, there was some discussion between the judge and the lawyers as to a then-pending prosecution at State court for cocaine possession. What's happened to that? I don't know about the State court, Your Honor. I wasn't the trial attorney on this. I know that there were drug prosecution, drug dealing distribution charges brought under a separate indictment in this case, and those were dismissed as part of the plea agreement in this. So the only Federal charges he faced were the possession, felon in possession of a firearm. I don't know the status of any State charges on that. Okay. So if, let me just pose another range or hypothetical. If the judge were correct on the hunting issue in terms of the basis for having a firearm, but the judge were incorrect on the in furtherance issue, what would be the effect? Your Honor, I haven't calculated those ranges out, and I apologize for that. I'm assuming, just based upon what we know, that it would probably be close to a 12-month sentence, maybe a little bit more, probably 12 to 15, just understanding that an eight-level bump is twice as much as a four-level bump. But his, you know, I mean, his total sentencing was 27 months in this case, and if we were to reduce his offense level by four levels, that's a pretty significant reduction. I believe his offense level, his total offense level in this case was a 20, as calculated by the judge, Judge Van Sickle, in this case. So if we were to reduce it by four, it would be a 16, and I think his criminal history category was a three. So off the top of my head, I don't have the guidelines memorized yet to the point where I can just shoot that one out. Okay. So now the issue that I think bears some discussion is this, you know, in connection in furtherance or the various ways, depending on which statute or looking at the guidelines. But we use these 924C cases as our baseline. Let me ask you first, before we get into the substance, what do you think the standard of review is? That's a very good question. And I was reviewing the briefs last night. I noticed that we submitted that the standard of review was de novo, and the government submitted that the standard of review was abuse of discretion. I did some research just last night, and this Court has not been consistent on that. In fact, on the ---- No, that surprises me. Pardon? I'm sorry. Never mind. I said ---- I'm surprised that we've been ---- I'm surprised that we could possibly have different views on this. Well, and in fact, on April 3rd, this Court issued a decision in U.S. v. Snellenberger where it said the interpretation and application of the sentencing guidelines is reviewed de novo. But three days prior, in U.S. v. Cabecain, I can't pronounce that. I'm sorry. It said that application of the facts is reviewed for abuse of discretion. So in both cases cited a lot of decisions from the Ninth Circuit. So it really is all about ---- Well, we certainly ---- I think that there's no doubt that in terms of the interpretation itself, that's de novo. But the application, then that raises a question of is that de novo or is that really abuse of discretion? Well, Your Honor, and I think that this is actually a good case to consider that question because you have two different applications here. And the first one, I would argue, is really a de novo review because the facts are undisputed and the interpretation of those facts is undisputed. So it's a legal question, much like the sufficiency of evidence. Given everything that the government says is true, we still don't meet ---- they still don't meet their burden. And that's truly a de novo review because this Court's in the same position as the district court would be. Now, as to the second argument on the eight-level reduction, in that case, the facts are undisputed, but the interpretation of those facts is disputed in the sense that both the government and the court said, well, he changed his story. We say, no, he didn't. The stories aren't inconsistent. He said he was using the guns for hunting and that the guns belonged to somebody else. That's not inconsistent. But nevertheless, I think that maybe the interpretation of facts, such as the district court did in that case, is subject to more of an abuse of discretion standard as opposed to the first issue in this case where there is no dispute about the interpretation of the facts. Kennedy. What's your best version of how we should look at these facts? Let's start with in connection with the guns are not there, or excuse me, the guns are not seen by the confidential informant. Right. Even though he's got repeated visits to the bedroom where the drugs are being sold. When the search warrant is executed, the guns are, what do we know about where the guns are? Well, in the first part of the PSI that just says the guns are in the bedroom, I believe that on page 8, section 35, it actually says that two of the guns are found in cases. One of them is on the dresser and one of them is under the bed. And Judge Van Sickle, I think, noted that in his opinion. And was it contested at trial that as to where they were and as to whether two of them were in cases? No. So I don't know what you mean by sentencing. So we take that as a given? Sure. Okay. Take that as a given. They're in cases. One of them is in plain view. One of them is under the bed. And the third one, I don't know where it is. Yeah. We don't know where the other one was. And we know which one was not accounted for at all, the shotgun or either of the two rifles? I believe it was, and I may be wrong, but I believe, and I'm terrible with guns, but the 30, it was the 30 and the 20. 30-30. There we go. 30-30 and the 20 gauge. One of them was under the bed and one of them was on. And the rifle, I think, is the one that's unaccounted for. But we don't know. So the two that were in their cases were the two other than the shotgun, right? Right. Exactly. We know nothing about the shotgun. The one on the dresser, was that the pistol? I don't know. I don't know, Your Honor. I'm sorry. Was there a pistol or were they both? They were all rifles. Both rifles. One shotgun. Well, I think, and I'm not a gun person very much, but I think a rifle is not the same thing as a shotgun. I think you had two rifles and one shotgun. Right. Exactly. A shotgun that maybe looked like a shotgun. And the rifle was on the dresser? No. We don't know where the rifle was. Well, it was either a rifle or a shotgun on the dresser. Well, and like I said, I think that, and like I said, I don't know my guns. Is the 20 gauge a shotgun? Yes. It's called a gauge, which means it's a shotgun. Okay. Well, then I apologize. Then, yes, two of the guns were a shotgun. I'm burying myself. Well, it's kind of important. Well, you know, it's important. What was on the dresser? Yes. Yes. And it was on the dresser. What was? One of them in a case on the dresser. One of what? The rifles? One of the guns. Yes. Right. That's all. One of the guns. Well, in the case, leaving aside the, there's proximity in time and proximity in place issues. Right. So we're talking about proximity in place. And certainly in cases where we've looked at this, if you had a gun, whether it was under the bed, if it was at a place where drugs are being dealt, we generally have found that that's enough at least to satisfy the infuriance under the 924C. Why is this case any different? Well, the proximity, the simple possession of a weapon, and I'm running out of time here, is not necessarily enough. And I think there's plenty of case law in this. And this infuriance of means even if he had, you know, had one of these cases outside of the case and had leaned it up against the wall so that somebody walking in buying drugs saw the gun and knew this guy was armed and not to pull anything, then I think you have an argument here that there's nothing in the record that suggests that these guys even knew there was a gun in the house. And three months ago Well, usually they don't. I mean, that, we have cases where the gun is under the bed. Right. And the people, the purchasers don't necessarily know that there's a gun. The question is, does the seller have the gun accessible in case things don't go as well as hoped? Right. And the seller's intent is, I think, the question more than what the third party sees or Why don't we hear from the government? Thank you. Thank you, Your Honor. May it please the Court. Thomas Hanlon on behalf of the Appellate of the United States. The first issue I'd like to address is the four-level enhancement pursuant to 2K2.1b5. That is the four-level sentencing enhancement that the firearm was possessed in connection with the felony offense. This Court has held to the extent that the government relies upon physical possession, it must show that the firearm was possessed in a manner that permits an inference that it facilitated or potentially facilitated the felonious conduct. In other words, there was some potential emboldening role by possession of the firearm. Looking at United States v. Palancho, in Palancho, the defendant in that case, was selling marijuana at an intersection. Officers observed him walking to a nearby car periodically, then coming back to the intersection to sell marijuana. On a separate occasion, officers observed Mr. Palancho selling marijuana, walked to his car, removed something from his jacket, put it in the trunk. When he unlocked the front side door, the driver's side door, he was then apprehended. When the officers searched the interior of the car, when Mr. Palancho was not out and he was selling drugs, they found a handgun. In that case, this Court found that the gun in Palancho's car potentially emboldened him to undertake the illicit drug sales, and that emboldened him to compel payment for individuals that were buying the marijuana and protect the drugs and protect the cash that were found in the trunk of the car. That was a handgun, correct? Yes, Your Honor, that was a handgun. But what we've got here is two hunting rifles and one shotgun. That's correct, Your Honor. What we have here is a .30-30 rifle. We have a .22-caliber rifle, and we have a shotgun. Right. And can you help us any more than we've already been helped in terms of where they were found? Your Honor, I don't have the... Which guns were in which cases and so on? Your Honor, I don't have the cited to the excerpt of record. My recollection is that there was a .22-caliber rifle found underneath the bed, a .30-30 caliber rifle found on top of a dresser, and the shotgun was not clear in the record or from the police reports where that was found, other than it was... Were both of the rifles in cases? Yes, Your Honor. The rifles were... The .22, yes. Both rifles were found in cases inside the house. One underneath the bed where the defendant... And was any of these three loaded at the time they were found? The rifles were not loaded, but two boxes of ammunition were found inside the bedroom where the defendant was located. The .22-caliber rifle was found underneath the bed where the defendant was found laying when they entered the house. And was there any... Were there any shells in the shotgun? There were no shells in the shotgun, Your Honor. The three firearms... And was there shotgun ammunition in the bedroom? There was not, Your Honor. There was .30-30 caliber ammunition and .22 ammunition found in the bedroom. And do we know where the ammunition was found in the bedroom? The record was not clear, Your Honor, other than the ammunition was found in the bedroom where the defendant was located and where the guns were located. Okay. So we have one of the two rifles in plain view, both of the rifles in cases. There's ammunition for both of the rifles somewhere in the bedroom. We have a shotgun. We don't know where it was and we don't know whether it was in a case, but we do know that there was no ammunition for the shotgun in the room. Is that where we are? You're absolutely correct, Your Honor. Okay. In the present case, it's the government's theory that the firearms in this case potentially embolden the defendant in the illicit drug sales and to protect the cocaine that was found in the bedroom. What do we make of the fact that the confidential source makes quite a number of purchases? I can't remember. I think it's about four of them over a sustained period. And at no time does he see any weapon in the room. Your Honor, the confidential source made purchases observing Rodriguez go into the bedroom on two occasions, November 15th and November 17th, and then purchases drugs from Mr. Rodriguez at the house in January. And how many times does he go into the bedroom during these purchases? There's two instances where he's standing outside of the bedroom and observes Mr. Rodriguez go into the bedroom. And in addition to that he ever goes into the bedroom? That's not my understanding, Your Honor, is that he's standing outside of the bedroom. But as noted in the pre-sentence of the case. What's your understanding based on? I mean, I had thought he'd gone into the bedroom, but I may be mistaken. From the review of the record, my understanding was that the confidential source observed Mr. Rodriguez would come into the house, was introduced to Mr. Rodriguez and the facts in the plea agreement. He then observed Mr. Rodriguez go into the bedroom, and he looked inside as Mr. Rodriguez removed cocaine from a drawer. The confidential source also noted that Mr. Rodriguez. So he could see into the bedroom. That's correct, Your Honor. And it also noted that the court found, and as listed in the pre-sense investigation report, the confidential source indicated there was a video monitor set up and that Mr. Rodriguez was watching video monitor inside the house to see what was going on outside. Certainly you can infer that if a defendant is inside the house watching a video monitor, that he would not necessarily have to present a gun when the person enters the house. Normally that individual would be trusted when they're coming into the house to make the purchase of drugs. Did you try to get any testimony from anybody in the house that would confirm your notion that these guns were not sort of given to him for safekeeping for hunting rats or hunting deer or so on? Do you have any testimony in the record about this? No. There is no testimony regarding that issue, Your Honor. Who has what burden of proof on this question as to what function the guns might have served? Regarding the hunting rifle, it's whether or not the defendant receives the reduction of the penalty. No, no. Who has the burden of proof? The defendant. On the hunting issue. Yes. On the hunting issue, the defendant. In connection with the government. The government has the burden. With the hunting issue, the defendant has the burden by preponderance of the evidence. Okay. But so let's go back to in connection with, where I think if there's – between the two, you're probably in a weaker position on that one, although I'm not positive on that one. So let's see what happens with this one. What obligation does the government have to do anything more than simply say, we found two unloaded rifles in cases, ammunition also in the room? I mean, if this had been a seriously litigated issue, I assume that we would have had more testimony as to, we might have talked to the daughter. We might have talked to other people in the room and other people in the apartment and so on. But you didn't do that. That's correct, Your Honor. And had this been a 924C charge, then there may have been evidence presented. And I acknowledge that 924C is the appropriate standard for this enhancement. However, under 924C, the government, to satisfy the element, to satisfy the intention that he possessed a firearm, the government must show a nexus between the locus of the drug activities and the firearms. In that, the government can look to prove that intent, that he possessed a firearm. You'd look to the accessibility of the firearms, the proximity to the drug activities. And in this case, all of the firearms are found inside the defendant's bedroom. This is not a case such as United States v. Ellis where the defendant was found hiding in his girlfriend's closet and then up above him there was an unloaded rifle wrapped in a towel. That did not embolden him to commit any offenses. No drug activity crimes were occurring in that closet. In this case, we have a defendant engaged in drug sale operations that's uncontested by the defense. We have three firearms that he's saying are for hunting purposes. They're not inside of a hunting case. They're not altogether inside of a closet. Kagan. Wait. What do you mean by a hunting case? Is that different from a case? No. What I'm saying is like a hunting safe, a safe where the gun could be. You mean like a gun, one of those locked gun racks. Yes. I see. A gun cabinet. That's correct, Your Honor. Rather, they're strategically located throughout the room, one directly under the bed where the defendant's laying, another one on top of the dresser, and then the third, the shotgun inside the house with two boxes of ammunition. At the time of the search warrant, there's three baggies of cocaine on the defendant's person, the digital scale, as noted by the confidential source, on the nightstand, and concave residue also located on the nightstand. You know, these cases are hard, as you know, when you read through all of them. But it does seem to be the way the cases are going that if you have proximity to the drug deal and the drug deal is taking place in that location, that the cases have found enough to have in furtherance. So I think our challenge is to figure out, well, does this case kind of fall in that category? Is it a case that puts the guns outside of the connection with the drug deal? And here's the difficulty we always have, because we also have language in our cases that says, well, drugs plus gun does not equal in connection with. That's correct, Your Honor. And if I may, I point out to a case, a 924C case, where the government did not meet its level of proof, and that was the Rios case, where officers executed a search warrant in Mr. Rios' home. They found an unloaded, sawed-off shotgun, and they found that the government did not meet its burden of proof. And the reason the government did not meet its burden of proof is that the government never showed that Rios was involved in any drug-trafficking activities inside of his home. Rather, in Rios, he was involved in obtaining prescription drugs by fraudulent prescription, then distributing those to third parties. All of the drug-trafficking activities occurred at Rios' father's house, not at Rios' house. Therefore, the government was unable to show any nexus between the drug-trafficking activities and the firearms. But what, if anything, do we make of the fact that the defendant says that he thought the shotgun was a BB gun? I believe that the relevance for the government's perspective is that the defendant could not possibly have possessed the shotgun for lawful hunting purposes when he's telling law enforcement officers he had no idea that it was even a shotgun. It seems absurd that he would be hunting for elk or, as the argument presented by the defendant was that he was gathering roots and shooting animals to put food on the table for his family, it certainly seems highly improbable that he'd be hunting anything with a BB gun to put food on the table for his family. Or you might say it in a somewhat different way, but more or less to the same effect, that it's preposterous if he was using the guns for any purpose, that he would have mistaken a shotgun for a BB gun. And I can't think of any way that you could mistake a shotgun for a BB gun. Say he's not telling the truth. That's correct, Your Honor. And looking, of course, one thing, the shotgun shells have a lot of BBs in them. Yes, they do, Your Honor. Multiple BB guns. Thank you. Thank you. Do you need rebuttal time? We'll give you a minute if you need it. On page 4 of the government's brief, it says that on November 30th, 2005, while the confidential informant was buying drugs, while in the back bedroom, the confidential source was provided with a quantity of cocaine in exchange for $6. So he was back there. The trial court in this case in denying the four-level enhancement said there was no evidence to show that the drugs were not in the home during this time. So the district court basically put the burden on the defendant to disprove the temporal proximity, if you will. And finally, as to the BB gun, Your Honor, the purpose or the eight-level reduction applies if he used or intended to use the guns for hunting purposes. There's nothing that says that he had to have actually used them already. But if he intended to use them for that purpose, then the reduction applies. Thank you, Your Honor. Thank you. Thank you. Thank both counsel, and thanks for your patience for being the last case today. The United States v. Rodriguez is submitted.
judges: Hug, McKeown, W. Fletcher